1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   TONI L. RICHARDS,

8                              Plaintiff,          NO:  2:15-CV-134-RMP

9         v.                                       ORDER GRANTING IN PART AND
                                                   DENYING IN PART DEFENDANTS'
10  HEALTHCARE RESOURCES                           MOTION TO DISMISS
    GROUP, INC., a Washington
    corporation; CRYSTAL LARSEN and
11  JOHN DOE LARSEN, and the marital
    property comprised thereof; and
12  CANDICE NELSEN and JOHN DOE
    NELSEN, and the marital community
13  comprised thereof,

14                             Defendants.

15

16        BEFORE THE COURT is Defendants' Motion to Dismiss Under Fed. R.

17  Civ. P. 12(b)(6), **ECF No. 7**.  The Court heard oral argument on the motion on

18  September 15, 2015, in Spokane, Washington.  Plaintiff Toni L. Richards was

19  represented by Patrick J. Kirby.  Defendants were represented by Michael J. Hines

20

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 1

and Courtney Garcea.  The Court has reviewed the motion, all relevant filings, and is fully informed.

## BACKGROUND[1]

Plaintiff Toni L. Richards alleges that she has a record of several physical impairments and injuries, including:  (1) "injuries to her spine and a record of medical procedures to her spine which substantially limits her ability to walk too far, to stand in one position for too long, to lift more than thirty-five (35) pounds, or to sit too long without adjustment"; (2) "nerve damage to both of her legs and pain that radiates down her legs"; (3) physical impairment and injuries to her knees requiring her to wear knee braces on both knees; (4) "respiratory impairments asthma and allergies which substantially limits [sic] her ability to breath"; and (5) treatment for depression and anxiety.  ECF No. 1, Compl. ¶ 14.

---

[1] In their motion to dismiss, Defendants state several facts not included in Plaintiff's complaint.  Rule 12(d) provides that "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The Court declines to treat Defendants' motion as one for summary judgment, and therefore will not consider these extrinsic facts provided by Defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 2

1    Plaintiff states that on January 6, 2015, Defendant Healthcare Resource

2  Group, Inc. ("HRG") hired her to work as a "Follow Up Analyst," or medical

3  biller.  ECF No. 1, Compl. ¶ 15.  Prior to being employed with HRG, Plaintiff

4  allegedly obtained services from the Washington Division of Vocation

5  Rehabilitation ("DVR").  ECF No. 1, Compl. ¶ 12.  DVR "help[s] disabled persons

6  overcome barriers so that they may engage in gainful employment."  ECF No. 1,

7  Compl. ¶ 13.  Plaintiff states that DVR provided her with "counseling, guidance,

8  and vocation assessment [sic]" to help her overcome barriers to gainful

9  employment associated with several physical impairments and injuries from which

10  she suffered.  ECF No. 1, Compl. ¶¶ 12, 14.  Plaintiff alleges that she did not

11  disclose her physical impairments or her association with DVR when she applied

12  for the position with HRG.  ECF No. 1, Compl. ¶¶ 11, 12.

13    Plaintiff began work on January 13, 2015.  ECF No. 1, Compl. ¶ 17.  She

14  received some initial training, but was notified soon after she began employment

15  that she would be transferred to a new account.  ECF No. 1, Compl. ¶¶ 16, 19, 20.

16  Two weeks later, an HRG trainer gave Plaintiff three days of training on the new

17  billing software and procedures related to Plaintiff's position.  ECF No. 1, Compl.

18  ¶ 21.  On January 30, 2015, Plaintiff was "able to perform her work duties on the

19  new account at her workstation with assistance from the trainer as needed."  ECF

20  No. 1, Compl. ¶ 22.

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 3

1    Plaintiff alleges that on February 4, 2015, she sent an e-mail to Lindsay

2    Berger, an HRG employee in the Human Resources department, stating that she

3    had "been working with the Department of Vocational Rehab" and that she needed

4    to forward to DVR a copy of her job description for their records to enable DVR to

5    close her case.  ECF No. 1, Compl. ¶ 23.  Ms. Berger directed Plaintiff to request a

6    copy of her job description from her direct supervisor.  ECF No. 1, Compl. ¶ 24.

7    Thereafter, on the same day, Plaintiff forwarded to her direct supervisor,

8    Defendant Candice Nelsen, the e-mail chain between her and Ms. Berger.  ECF

9    No. 1, Compl. ¶ 25.  Plaintiff did not receive a response from Defendant Nelson,

10   and on February 9, 2015, she asked Defendant Nelsen if she had received

11   Plaintiff's e-mail.  Defendant Nelson allegedly replied, "I get so many emails. I

12   haven't gotten to it."  ECF No. 1, Compl. ¶ 33.  Plaintiff alleges that Defendant

13   Nelsen "routinely and promptly read and replied to other work emails" from

14   Plaintiff.  ECF No. 1, Compl. ¶ 34.

15       On February 6, 2015, Plaintiff states that Defendant Nelsen, and Nelsen's

16   immediate supervisor, Defendant Larsen, placed Plaintiff on a thirty day

17   Performance Improvement Plan ("PIP").  ECF No. 1, Compl. ¶ 26.  The PIP

18   "indicated that [Plaintiff] had thirty (30) days to improve her job performance."

19   ECF No. 1, Compl. ¶ 30.  Plaintiff alleges that she disputed the validity of the PIP,

20   informing Defendants Nelsen and Larsen that she had received negligible training

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 4

1    during her first two weeks of employment, that she only had been working on her

2    new account for two days, and that the criteria with which her performance was

3    being assessed contradicted the training that Plaintiff had received from an HRG

4    trainer.  ECF No. 1, Compl. ¶ 27.  Defendants Nelsen and Larsen presented

5    Plaintiff with a printed PIP, which Plaintiff signed and returned to Defendant

6    Nelsen.  Plaintiff alleges that the printed PIP contained no handwriting apart from

7    her own signature when she returned it to Defendant Nelsen.  ECF No. 1, Compl. ¶

8    28.

9        Plaintiff alleges that on February 6, 2015, at 5:44 p.m., an HRG manager

10   sent an e-mail to Plaintiff and other HRG employees clarifying " 'potential

11   confusion' regarding the proper billing methods used by Follow-up Analysts and

12   the incorrect QA scoring criteria" used by one HRG trainer and by which

13   Plaintiff's performance had been assessed.  ECF No. 1, Compl. ¶ 32.  Plaintiff

14   asserts that the e-mail addressed the same concerns that Plaintiff had raised to

15   Defendants Nelsen and Larsen during the meeting in which they placed her on the

16   PIP.  ECF No. 1, Compl. ¶ 32.

17       On February 10, 2015, Defendant Nelsen allegedly observed Plaintiff

18   walking with a limp and inquired as to whether Plaintiff was okay.  Plaintiff states

19   that she told Defendant Nelsen, "Yea, I've been sitting too long, and I've got bad

20   knees."  ECF No. 1, Compl. ¶ 35.

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 5

1    Plaintiff alleges that her performance measurably improved after being

2    placed on the PIP, increasing by 16% within a week.  ECF No. 1, Compl. ¶ 38.  On

3    February 18, 2015, Defendant Nelsen met with Plaintiff and confirmed that

4    Plaintiff was employing proper billing methods and procedures.  ECF No. 1,

5    Compl. ¶ 39.  On February 19, 2015, an HRG trainer revised Plaintiff's most-

6    recent evaluation by adding points to her score to accord with Plaintiff's

7    conversation with Defendant Nelsen the day before.  ECF No. 1, Compl. ¶ 40.

8    Nevertheless, Plaintiff remained concerned about the criteria by which HRG

9    assessed her performance.  Plaintiff raised her concerns over the performance

10   criteria on February 19, 2015, verbally informing Defendant Nelsen that she was

11   confused by the seemingly-contradictory scoring criteria and training she had

12   received.  ECF No. 1, Compl. ¶ 41.  Plaintiff expressed concerns about the

13   qualifications of the HRG trainer conducting her performance evaluations.  ECF

14   No. 1, Compl. ¶ 41.

15   On February 20, 2015, Defendants Nelsen and Larsen terminated Plaintiff's

16   employment.  ECF No. 1, Compl. ¶ 42.  Plaintiff alleges that Defendant Larsen

17   asked her for a list of "training concerns."  When Plaintiff stated that she had not

18   prepared a list of training concerns, Defendant Larsen stated that collection reports

19   showed that Plaintiff was "not making enough money for the clients."  Plaintiff

20   allegedly responded that she had been working on her new account for less than

21

1  four weeks, that her account billings were "beginning to generate income not yet

2  reflected in reports reviewed by Defendant Larsen," and that she had "found

3  $2,000 billed and paid worker's compensation claims previously incorrectly

4  recorded as unpaid."  ECF No. 1, Compl. ¶ 42.  Defendant Larsen told Plaintiff,

5  "It's not working out," and terminated Plaintiff's employment, effective

6  immediately.  ECF No. 1, Compl. ¶ 42.

7      Plaintiff alleges that Defendant Larsen presented her with a pre-printed

8  notice of termination listing "issues of concern," including that Plaintiff failed to

9  provide a list of training needs within one week as outlined in the PIP meeting.

10  ECF No. 1, Compl. ¶ 44.  Plaintiff contends that she was never instructed to

11  provide Defendants Nelsen or Larsen with a list of training needs.  ECF No. 1,

12  Compl. ¶ 45.  She further alleges that when she reviewed her PIP after her

13  termination, "someone other than [Plaintiff] later wrote in feminine handwriting on

14  the last page of the printed PIP below [Plaintiff's] signature, 'Toni to provide list

15  of training items to Candice.'  Next to the feminine handwriting on the printed PIP

16  was the handwritten initials 'T.R.' "  ECF No. 1, Compl. ¶ 46.

17      The pre-printed notice of termination listed as a second "issue of concern"

18  that "[Plaintiff's] overall QA score had not improved to an acceptable score."  ECF

19  No. 1, Compl. ¶ 44.  However, Plaintiff alleges that Defendants Nelsen and Larsen

20  "did not have, and did not review," her most recent scores based on her

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 7

1  performance over the two weeks preceding her termination.  ECF No. 1, Compl. ¶

2  47.

3        Plaintiff filed this complaint alleging five causes of action against

4  Defendants HRG, Larsen, and Nelsen:  (1) discriminatory discharge in violation of

5  the Americans with Disabilities Act and the Washington Law Against

6  Discrimination; (2) wrongful discharge in violation of public policy RCW 74.29

7  and the Rehabilitation Act of 1973; (3) outrage, or intentional infliction of

8  emotional distress; (4) negligent infliction of emotional distress; and (5) negligent

9  supervision.  ECF No. 1.  Defendants move to dismiss Plaintiff's complaint for

10  failing to state a claim upon which relief may be granted, pursuant to Federal Rule

11  of Civil Procedure 12(b)(6).  ECF No. 7.

## DISCUSSION

### A.    Standard

        The Federal Rules of Civil Procedure allow for the dismissal of a complaint

where the plaintiff fails to state a claim upon which relief may be granted.  Fed. R.

Civ. P. 12(b)(6).  A motion to dismiss brought pursuant to this rule "tests the legal

sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In

reviewing the sufficiency of a complaint, a court accepts all well-pleaded

allegations as true and construes those allegations in the light most favorable to the

non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008)).

To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While specific legal theories need not be pleaded, the pleadings must put the opposing party on notice of the claim. *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is not required to establish a probability of success on the merits; however, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

**B.    Discriminatory Discharge**

In her first cause of action, Plaintiff claims that Defendants terminated her employment because they perceived her as being disabled, despite Plaintiff being qualified to perform the essential functions of the job. ECF No. 1, Compl. ¶¶ 50-58. Plaintiff contends that such intentional discrimination violates the Americans with Disabilities Act ("ADA") and the Washington Law Against Discrimination ("WLAD"). ECF No. 1, Compl. ¶¶ 50-58.

1   The ADA prohibits discrimination against qualified individuals with

2   disabilities.  ADA, 42 U.S.C. § 12112(a).  The ADA defines disability as: (A) a

3   physical or mental impairment that substantially limits one or more major life

4   activities of such individual; (B) a record of such an impairment; or (C) being

5   regarded as having such an impairment."  § 12102(1).  Pursuant to the ADA

6   Amendments Act ("ADAAA"), the definition of disability shall be construed "in

7   favor of broad coverage of individuals."  § 12102(4)(A).

8       An individual shall be "regarded as" having a disability "if the individual

9   establishes that he or she has been subjected to an action prohibited under [the

10  ADA] because of an actual or perceived physical or mental impairment whether or

11  not the impairment limits or is perceived to limit a major activity."  § 12102(3)(A).

12  According to the post-ADAAA regulations promulgated by the Equal Employment

13  Opportunity Commission, the " 'regarded as' prong of the definition of disability .

14  . . does not require a showing of an impairment that substantially limits a major life

15  activity or a record of such an impairment."  29 C.F.R. § 1630.2(g)(3).  However, a

16  "regarded as" claim may not be based on impairments that are "transitory and

17  minor."  § 12102(3)(B).  "A transitory impairment is an impairment with an actual

18  or expected duration of 6 months or less."  § 12102(3)(B).

19      A plaintiff asserting disparate treatment under the ADA and the WLAD may

20  prove her claim in two ways.  First, a plaintiff may produce direct or circumstantial

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 10

1   evidence that a discriminatory reason more likely than not motivated the employer.

2   *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he

3   McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence

4   of discrimination."); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir.

5   2008) (identifying an alternative case theory for disability discrimination claims

6   supported by direct or circumstantial evidence); *Hill v. BCTI Income Fund-I*, 144

7   Wn.2d 172, 179-80 (2001) *overruled on other grounds by McClarty v. Totem*

8   *Elec.*, 157 Wn.2d 214 (2006) (noting that, where the plaintiff lacks direct evidence

9   of discriminatory animus, Washington courts generally apply the *McDonnell*

10  *Douglas* framework to claims brought pursuant to WLAD).  "When the plaintiff

11  offers direct evidence of discriminatory motive, a triable issue as to the actual

12  motivation of the employer is created even if the evidence is not substantial."

13  *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

14          Second, a plaintiff may make a prima facie case under the burden-shifting

15  framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

16  *Thurston*, 469 U.S. at 121; *Surrell*, 518 F.3d at 1105; *Hill*, 144 Wn.2d at 179-80.

17  Under the *McDonnell Douglas* framework, a plaintiff must show that (1) she is a

18  member of a protected class; (2) she performed according to her employer's

19  expectations; (3) she suffered an adverse employment action; and (4) similarly

20  situated individuals outside of the plaintiff's protected class were treated more

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 11

1    favorably.  *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123 (9th Cir.

2    2009).  Once the plaintiff succeeds in presenting a prima facie case, the burden

3    shifts to the defendant "to articulate a 'legitimate, nondiscriminatory reason' for its

4    employment decision."  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir.

5    2007).  The plaintiff may then present evidence demonstrating that "defendant's

6    proffered reason was pretext for unlawful discrimination."  *Id.*

7         Plaintiff has not identified whether she intends to establish her case through

8    direct and circumstantial evidence of discriminatory motivation, or under the

9    *McDonnell Douglas* framework.  The issue is not determinative here, however,

10   because under either approach Plaintiff's complaint contains sufficient factual

11   allegations to state a claim that is plausible on its face.  "[A]n employment

12   discrimination plaintiff need not plead a prima facie case of discrimination" in her

13   complaint.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).  The Supreme

14   Court upheld this rule in *Twombly*.  550 U.S. at 569-70.

15        Defendants argue that Plaintiff's claim fails to meet *Twombly*'s pleading

16   standards because Plaintiff does not identify from what specific disability she

17   alleges Defendants perceived her to suffer, whether the alleged disability is

18   substantially limiting, or how Defendants perceived Plaintiff as having this

19   disability.  ECF No. 7 at 7-11; s*ee Twombly*, 550 U.S. at 570.  However, the post-

20   2008 ADA is clear that Plaintiff need not demonstrate that her alleged disability is

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 12

substantially limiting. *See* § 12102(3)(A). Additionally, although Plaintiff must show that she suffers from a disability, the Court is not aware of any law requiring a plaintiff who suffers from more than one disability to prove which disability her employer regarded her as having, as long as any disability on which plaintiff relies is not transitory and minor. *See* § 12102(3)(B). Finally, Plaintiff need not present direct evidence that her employer perceived her to be suffering from a disability. Circumstantial evidence is sufficient to show a discriminatory motive under the first approach, and evidence of disparate treatment is sufficient to establish a prima facie case of discrimination under the *McDonnell Douglas* framework.

Plaintiff's complaint must only contain sufficient facts to state a claim to relief that is plausible on its face; she need not establish a prima facie case in the complaint. *Twombly*, 550 U.S. at 570; *Swierkiewicz*, 534 U.S. at 515. Plaintiff's complaint easily meets this standard. Plaintiff identifies several disabilities from which she suffers. ECF No. 1, Compl. ¶ 14. She establishes a dispute of fact as to whether she was qualified for the position, alleging that she was trained insufficiently but that her performance nevertheless was improving measurably at the time of her termination. ECF No. 1, Compl. ¶¶ 16, 19, 20, 21, 22, 38, 39, 40. Plaintiff alleges that Defendants became aware of her disability because she informed them that she had obtained services from DVR, Defendant Nelsen observed Plaintiff limping, and Plaintiff stated that she had bad knees. ECF No. 1,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 13

1  Compl. ¶¶ 23, 25, 35.  She states that Defendants terminated her employment

2  without good cause, and she raises a plausible claim that her termination was based

3  on Defendants' knowledge of her disability.  ECF No. 1, Compl. ¶¶ 50-58.

4  Plaintiff's complaint sufficiently states a claim to relief that is plausible on its face.

5  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's first cause of

6  action for discriminatory discharge.

7  **C.    Wrongful Discharge in Violation of Public Policy**

8          In her second cause of action, Plaintiff claims that her termination violated

9  public policy set forth in Revised Code of Washington 74.29, WAC 388-891, and

10  the Rehabilitation Act of 1973, 29 U.S.C. § 701.  ECF No. 1, Compl. ¶¶ 59-62.

11  Plaintiff claims that her discharge violated the public policies set forth in these

12  statutes because she was terminated for having participated in vocational

13  rehabilitation and job support services provided by Washington's vocational

14  rehabilitation program, DVR.  ECF No. 1, Compl. ¶61.

15          The purpose of The Rehabilitation Act of 1973 is "to empower individuals

16  with disabilities to maximize employment, economic self-sufficiency,

17  independence, and inclusion and integration into society through . . . statewide

18  workforce development systems . . . [and] programs of vocational rehabilitation."

19  29 U.S.C. § 701(b)(1).  The Rehabilitation Act authorizes federal grants to states to

20

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 14

1    assist in meeting the costs of vocational rehabilitation services.  29 U.S.C. §

2    720(b)(1).

3           RCW 74.29 mandates that Washington accept federal grant money in order

4    to, among other things, "rehabilitate individuals with disabilities who have a

5    barrier to employment so that they may prepare for and engage in a gainful

6    occupation."  RCW 74.29.005; RCW 74.29.050.  WAC 388-891 governs the

7    vocational rehabilitation services provided in Washington, and notes that

8    vocational rehabilitation services are "offered to assist individuals with disabilities

9    to prepare for, get, and keep jobs that are consistent with their strengths, resources,

10   priorities, concerns, abilities, capabilities, interests, and informed choice."  WAC

11   388-891-0005.  WAC 388-891 specifically states that it is "consistent" with the

12   Rehabilitation Act of 1973.  WAC 388-891-0005.

13          To prevail on a wrongful discharge claim in Washington, a plaintiff must

14   show four factors:  (1) "the existence of a clear public policy"; (2) "that

15   discouraging the conduct in which [she] engaged would jeopardize the public

16   policy"; (3) that the public-policy-linked conduct caused the dismissal"; and (4)

17   "that the defendant has not offered an overriding justification for the dismissal."

18   *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 529 (2011) (en banc) (quoting *Gardner v.*

19   *Loomis Armored, Inc.*, 128 Wn.2d 931, 941 (1996).

20

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 15

1    The second element, the jeopardy element, asks "whether current laws and

2    regulations provide an adequate means of promoting the public policies"

3    underlying the cited statutes. *Id.* at 530. The plaintiff must show that "other

4    means of promoting the public policy are inadequate, and that the actions the

5    plaintiff took were the only available adequate means to promote the public

6    policy." *Id.* (citing *Hubbard v. Spokane Cnty.*, 146 Wn.2d 699, 713 (2002) and

7    *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 208 (2008)).

8    Defendants argue that Plaintiff's public policy claim must be dismissed

9    because Plaintiff is "adequately protected by the existing statutory remedies

10    contained in WLAD and ADA . . . ." ECF No. 7 at 12. Plaintiff argues that the

11    public policies set forth in The Rehabilitation Act of 1973, RCW 74.29, and WAC

12    388-891 are different in kind than the public policies protected by WLAD and

13    ADA, and that there is no statutory remedy for a plaintiff who is terminated

14    because she used DVR services, rather than because she is disabled or regarded as

15    disabled. ECF No. 9 at 16. Defendants argue that Plaintiff's wrongful discharge

16    claim cannot be separated from her disability because she was an at-will employee

17    and therefore could have been fired for using DVR services without violating

18    WLAD or ADA. ECF No. 10.

19    Defendants' arguments miss the mark. The Rehabilitation Act and RCW

20    388-891 both establish a clear public policy favoring vocational rehabilitation

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 16

services for disabled individuals to enable them to participate successfully in the workforce.   RCW 74.29; 29 U.S.C. § 701.  An employer who terminates an employee upon learning that employee utilized DVR's services may be violating that public policy, even if the employee otherwise is an at-will employee.

Plaintiff's second cause of action alleges that Defendants terminated her employment because she utilized DVR services.  In other words, Plaintiff's argument is that when presented with two similarly qualified individuals with the same disability, Defendants terminated the individual who used DVR but not the individual who did not use DVR, out of animus toward the use of vocational rehabilitation services, not because the individual is disabled.  If Defendants' motivation for termination was Plaintiff's disability, then Plaintiff has an adequate legal remedy in ADA and WLAC.  However, if Defendants' motivation for terminating Plaintiff was her use of vocational rehabilitation, Plaintiff has no adequate legal remedy to redress that harm apart from a claim for wrongful discharge in violation of public policy.

Plaintiff has met the minimum standard on a motion to dismiss to plead sufficient facts to state a plausible claim for relief.  She has identified a clear public policy:  a federal and state policy favoring the availability and utilization of vocational rehabilitation services for and by individuals with disabilities.  RCW 74.29; 29 U.S.C. § 701.  If Plaintiff proves that Defendants terminated her

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 17

1  employment because she used vocational rehabilitation, rather than because she

2  had a disability or was regarded as having a disability, then Plaintiff would have no

3  other adequate legal remedy besides wrongful discharge in violation of public

4  policy.  In addition, allowing employers to terminate employees based on the

5  employees' having used rehabilitation services would jeopardize the public policy

6  set forth in the Rehabilitation Act and RCW 74.29.

7          Plaintiff alleges that she was placed on the PIP just two days after she

8  informed Defendants that she had been a DVR client, after showing improved

9  performance and despite having received little training.  This circumstantial

10  evidence is sufficient at this stage of the pleadings to establish a plausible claim

11  that Defendants terminated Plaintiff's employment because she utilized DVR

12  services.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's

13  second cause of action for wrongful discharge in violation of public policy.

14  **D.      Outrage**

15          In her complaint, Plaintiff contends that Defendants' conduct was

16  "scurrilous, abusive, [ ] intimidating," and "so outrageous in character as to be

17  absolutely intolerable in a civilized society."  ECF No. 1, Compl. ¶¶ 63-66.  She

18  claims that Defendants breached a duty of care that they owed to her, and thus that

19  they committed the tort of outrage.  ECF No. 1, Compl. ¶ 65.  Defendants argue in

20  their motion to dismiss that Plaintiff fails to identify what conduct she deems

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 18

1    extreme and outrageous.  ECF No. 7 at 15.  In response, Plaintiff argues that by

2    allegedly forging her initials at the bottom of the PIP form and then using that form

3    as support justifying her termination, Defendants committed extreme and

4    outrageous conduct.  ECF No. 9 at 18.

5         To succeed on a claim for the tort of outrage, a plaintiff must show:  "(1)

6    extreme and outrageous conduct; (2) intentional or reckless infliction of emotional

7    distress; and (3) actual result to the plaintiff of severe emotional distress."  *Snyder*

8    *v. Medical Serv. Corp. of Eastern Wa.*, 145 Wn.2d 233, 242 (2001) (en banc)

9    ("*Snyder II*") (quoting *Birklid v. Boeing Co.*, 127 Wn.2d 853, 867 (1995) (en

10   banc)) (internal quotation marks omitted).  The purported conduct must be "so

11   outrageous in character, and so extreme in degree, as to go beyond all possible

12   bounds of decency, and to be regarded as atrocious, and utterly intolerable to a

13   civilized community."  *Birklid*, 127 Wn.2d at 867 (quoting *Grimsby v. Samson*, 85

14   Wn.2d 52, 59 (1975).  Although "the question of whether certain conduct is

15   sufficiently outrageous is ordinarily for the jury, [ ] it is initially for the court to

16   determine if reasonable minds could differ on whether the conduct was sufficiently

17   extreme to result in liability."  *Dicomes v. States*, 113 Wn.2d 612, 630 (1989) (en

18   banc) (citing *Phillips v. Hardwick*, 29 Wn. App. 382, 387 (Wash. Ct. App. 1981)).

19        The fact of a discharge alone is not sufficient to constitute outrage.  *Id.*

20   (citing *Evrard v. Jacobson*, 117 Wis.2d 69 (Ct. App. 1983)).  "It is the manner in

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 19

1    which a discharge is accomplished that might constitute outrageous conduct." *Id.*

2    Additionally, "mere insults and indignities, such as causing embarrassment or

3    humiliation" are insufficient to support a claim of outrage. *Id.*

4        In *Dicomes*, the plaintiff alleged that her employer intentionally prepared a

5    false report identifying incidents of mismanagement, and then used it to fire her.

6    *Dicomes*, 113 Wn.2d at 616, 630-31.  The Washington Supreme Court noted that

7    the plaintiff had been discharged privately although her employer had responded

8    briefly to media inquiries regarding her termination.  *Id*. at 630.  The court held

9    that the defendant's conduct in discharging the plaintiff did not rise to the level

10   required by a claim of outrage, even if the mismanagement report was pretext

11   intended to create a false basis for terminating the plaintiff.  *Id.* The court noted

12   that, even if defendant's conduct constituted malice, malicious conduct is

13   insufficient to constitute extreme and outrageous conduct supporting a claim of

14   outrage.  *Id.* at 631 (citing Restatement (Second) of Torts § 46, comment d (1965)

15   (summarizing the prevailing view among courts that the tort of outrage cannot be

16   supported by evidence that "the defendant has acted with an intent which is

17   tortious or even criminal, or that he has intended to inflict emotional distress, or

18   even that his conduct has been characterized by 'malice,' or a degree of

19   aggravation which would entitle the plaintiff to punitive damages for another

20   tort.")).

21

1       Viewing the facts in the light most favorable to the non-moving party, the

2   Court presumes for purposes of this order that Defendants Nelsen or Larsen forged

3   Plaintiff's initials at the bottom of the PIP.  However, Plaintiff does not allege that

4   she was discharged in public or in an egregious or humiliating manner.  Even

5   assuming, in arguendo, that Defendants falsified Plaintiff's initials with intent to

6   create a false basis for discharging her, under *Dicomes*, such conduct is insufficient

7   as a matter of law to rise to the level of being "atrocious, and utterly intolerable to

8   a civilized community."  *Id.* at 630-31.  Therefore, the Court grants Defendants'

9   motion to dismiss with prejudice Plaintiff's third cause of action for outrage.

10  **E.    Negligent Infliction of Emotional Distress**

11      In her fourth cause of action, Plaintiff claims that "Defendants' conduct in

12  failing to take prompt, adequate action to protect [her] health and well-being at

13  work" constitutes the tort of negligent infliction of emotional distress.  ECF No. 1,

14  Compl. ¶¶ 67-70.  She contends that Defendants owed her a duty of care that they

15  breached.  ECF No. 1, Compl. ¶ 69.

16      To succeed on a claim of negligent infliction of emotional distress against

17  one's employer, a plaintiff must show:  "(1) that her employer's negligent acts

18  injured her, (2) the acts were not a workplace dispute or employee discipline, (3)

19  the injury is not covered by the Industrial Insurance Act, and (4) the dominant

20  feature of the negligence claim was the emotional injury."  *Snyder v. Medical Serv.*

21

1   *Corp. of Eastern Wa.*, 98 Wn. App. 315, 323 (Wash. Ct. App. 1999) ("*Snyder I*")

2   *affirmed by Snyder II*, 145 Wn.2d 233.  Additionally, Plaintiff must make out a

3   prima facie case showing duty, breach, proximate cause, and injury.  *Snyder II,* 145

4   Wn.2d at 243.

5         Whether a defendant owed a duty to the plaintiff is a question of law.  *Id.*

6   "The general rule in Washington is an employer has the right to discharge an

7   employee, with or without case, in the absence of a contract for a specified period

8   of time."  *Id.* at 238.  In Washington, "employers do not owe employees a duty to

9   use reasonable care to avoid the inadvertent infliction of emotional distress when

10  responding to workplace disputes."  *Bishop v. State*, 77 Wn. App. 288, 234 (Wash.

11  Ct. App. 1995).  An employer's obligation "to refrain from particular conduct is

12  owed only to those who are foreseeably endangered by the conduct and only with

13  respect to those risks or hazards whose likelihood made the conduct unreasonably

14  dangerous."  *Id.* at 244.  "Conduct is unreasonably dangerous when its risks

15  outweigh its utility."  *Id.*

16        Plaintiff does not argue that her discharge constituted negligence, but rather

17  that the alleged falsification of her initials on the PIP constituted negligence that

18  breached a duty of care owed to her.  ECF No. 9 at 18-19.  This theory of

19  negligence is not clearly described in the complaint.  *See* ECF No. 1, Compl. ¶¶

20  67-70.  However, all of the facts necessary to state a plausible claim to relief are

21

included within the complaint and incorporated into the fourth cause of action for negligent infliction of emotional distress.  ECF No. 1, Compl. ¶ 67.

Defendants' alleged forgery of Plaintiff's initials, although used later to support Plaintiff's discharge, arguably constituted a separate event that occurred more than two weeks prior to Plaintiff's termination.  It arguably was unreasonably dangerous in that it could have formed a false basis for Plaintiff's termination or discipline.  However, because Plaintiff was an at-will employee, there is no identifiable duty which Defendants breached.

Defendants could have discharged Plaintiff with or without her initials on the PIP, and with or without cause, regardless of the alleged forgery.  Therefore, Defendants' conduct was not likely to cause an unreasonably dangerous outcome that Defendants had a legal duty to avoid, and thus, Defendants' conduct was not foreseeably dangerous.

Employers only owe a duty to refrain from conduct that is foreseeably and unreasonably dangerous.  Plaintiff's complaint fails to allege sufficient facts showing that her emotional injury was foreseeable, and any unreasonable danger based on Plaintiff's potential termination is danger that Defendants had no legal duty to avoid.  Therefore, the Court grants Defendants' motion to dismiss with prejudice Plaintiff's fourth cause of action for negligent infliction of emotional distress.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 23

1    **F.    Negligent Supervision / Retention**

2         In her fifth cause of action, Plaintiff claims that Defendant HRG negligently

3    supervised and retained Defendants Nelsen and Larsen, subjecting her to "abusive

4    and hostile conduct."  ECF No. 1, Compl. ¶¶ 71-74.  Plaintiff contends that

5    Defendant HRG breached a duty of care that it owed to Plaintiff.  ECF No. 1,

6    Compl. ¶ 73.

7         In Washington, the law distinguishes between vicarious liability and liability

8    for negligent supervision or retention.  *Niece v. Elmview Group Homes*, 131 Wn.2d

9    39, 48-52 (1997) (en banc) (citing Restatement (Second) of Torts § 317 (1965)

10   (commenting that § 317, Duty of Master to Control Conduct of Servant, is only

11   applicable "when the servant is acting outside the scope of his employment.  If the

12   servant is acting within the scope of his employment, the master may be

13   vicariously liable under the principles of the law of Agency.").  When an employee

14   is acting within the scope of her employment, an employer may be vicariously

15   liable for that conduct under the doctrine of respondeat superior.  *Niece*, 131

16   Wn.2d at 48 (1997).

17        However, "[w]here the employee steps aside from the employer's purposes

18   in order to pursue a personal objective of the employee, the employer is not

19   vicariously liable.  *Id.*  When an employee acts outside the scope of her

20   employment, the employer may still be liable under the narrower tort theory of

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 24

1  negligent supervision or retention.  "Liability under these theories is analytically

2  distinct and separate from vicarious liability."  *Id.*  The theory of negligent

3  supervision creates a "limited duty to control an employee for the protection of

4  third parties, *even where* the employee is acting outside the scope of employment."

5  *Id.* at 51 (emphasis added).

6         Plaintiff pleaded a claim of negligent supervision and retention, yet

7  simultaneously pleaded that Defendants Larsen and Nelsen, at all times therein,

8  acted within the scope of their capacities as employees of Defendant HRG.  ECF

9  No. 1, Compl. ¶¶ 3, 4.  The tort of negligent supervision or retention is not a

10 cognizable claim when an employee acts within the scope of her employment.

11        Additionally, Plaintiff fails to identify what specific duty Defendants

12 allegedly breached.  Because Plaintiff was an at-will employee, Defendants did not

13 have a duty to establish a good cause basis for termination prior to terminating

14 Plaintiff.  Even assuming that Defendants did forge Plaintiff's initials, Defendants

15 rightfully could fire her without cause at all or based on a false reason.

16        Therefore, the Court grants Defendants' motion to dismiss with prejudice

17 Plaintiff's fifth cause of action for negligent supervision / retention in part.

18        Accordingly, **IT IS HEREBY ORDERED**:

19        1.  Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), **ECF No.**

20            **7**, is **GRANTED in part** and **DENIED in part.**

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 25

2. Defendant's Motion to Dismiss is **denied** as to Plaintiff's **first cause of action** for discriminatory discharge and **second cause of action** for wrongful discharge in violation of public policy.

3. Plaintiff's **third cause of action** for outrage, **fourth cause of action** for negligent infliction of emotional distress, and **fifth cause of action** for negligent supervision are **DISMISSED with prejudice**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** this 16th day of September 2015.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 26