UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TONI L. RICHARDS,

                              Plaintiff,

        v.

HEALTHCARE RESOURCES
GROUP, INC., a Washington
corporation; CRYSTAL LARSEN and
JOHN DOE LARSEN, and the marital
property comprised thereof; and
CANDICE NELSEN and JOHN DOE
NELSEN, and the marital community
comprised thereof,

                              Defendants.

NO:  2:15-CV-134-RMP

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

        BEFORE THIS COURT is Defendants' Motion for Summary Judgment of

all Plaintiff's claims against Defendants, ECF No. 53, and Plaintiff's Motion for

Partial Summary Judgment, ECF No. 48.[1]  Plaintiff, Toni Richards ("Richards"), is

---

[1] The order first addresses Defendants' motion for summary judgment then

Plaintiff's motion for partial summary judgment.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 1

represented by Patrick Kirby and Michael Love.  Defendants Healthcare Resource Group, Inc. ("HRG"), Crystal Larsen and John Doe Larsen, and Candice Nelsen and John Doe Nelsen, are represented by Michael Hines.

Ms. Richards filed suit against her former employer, HRG, claiming violation of 42 U.S.C. § 12101 *et seq.,* 42 U.S.C. §1981(a) *et seq.;* and RCW 49.60 *et seq.*; as well as Washington State law claims of wrongful discharge in violation of public policy, outrage, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision and retention.  ECF No. 1 at 14-18.

The Court has reviewed the motions, the response memoranda and the reply memoranda, has heard argument from counsel, and is fully informed.  The Court finds that Ms. Richards fails to meet her burden at the summary judgment stage and grants Defendants' motion for summary judgment of all claims.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the claims under 42 U.S.C. § 12101 *et seq.,* and 42 U.S.C. §1981(a) *et seq.*; and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims.

## BACKGROUND

Ms. Richards was hired as a medical billing representative with Healthcare Resources Group ("HRG").  ECF No. 61 at 2, Larsen Decl. ¶ 4.  It is undisputed that Ms. Richards was an "at will" employee.  ECF No. 86 at 2.  It also is undisputed that

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

Ms. Richards never informed HRG that she was disabled until after her employment ended. ECF No. 86 at 2. Ms. Richards concedes that she never disclosed during the hiring process that she used the services of Division of Vocational Rehabilitation ("DVR) or that she ever needed accommodation. ECF No. 86 at 2. Ms. Richards also concedes that her disabilities did not impact her ability to perform any aspect of her HRG job duties. ECF No. 86 at 2.

Ms. Richards' responsibilities as an HRG billing representative involved reviewing billing and account receivables for customer accounts, assessing billing status, and rebilling as necessary. ECF No. 61 at 2, Larsen Decl. ¶ 3. Crystal Larsen was the sole person who possessed the authority to discipline or terminate Ms. Richards during Ms. Richards' employment. ECF No. 61 at 2; Larsen Decl. ¶¶ 4, 7.

Candice Nelsen worked as Ms. Richards' immediate supervisor under Ms. Larsen's authority and was responsible for assisting billing representatives, as well as assisting Ms. Larsen with administrative tasks. ECF No. 61 at 2, Larsen Decl. ¶ 5. During the period of Ms. Richards' tenure with HRG, Ms. Nelsen did not have the authority to discipline, impose a PIP, or terminate Ms. Richards. ECF No. 61 at 2, Larsen Decl. ¶ 8. Despite Ms. Nelsen's lack of authority to discipline or terminate Ms. Richards, it is undisputed that Ms. Nelsen attended at least two meetings with Ms. Larsen and Ms. Richards: first, when Ms. Larsen placed Ms. Richards on a performance improvement plan ("PIP"); and later when Ms. Larsen terminated Ms.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

Richards' employment.  ECF No. 86 at 42; ECF No. 84-5, Kirby Aff., Ex C, Richards Dep. 103:23-24; ECF No. 84-5, Kirby Aff., Ex C, Richards Dep. 128:10-19.  It also is undisputed that Ms. Nelsen signed Ms. Richards' termination letter along with Ms. Larsen.  ECF No. 84-13, Kirby Aff. Ex. J.

Prior to being hired by HRG, Ms. Richards represented to HRG that she had extensive billing experience, but she still received the same general training by HRG as all other new, entry level billing representatives.  ECF No. 61 at 4, Larsen Decl. ¶ 13.  Ms. Richards' training included one day of general training followed by 2 to 3 days of direct peer training.  ECF No. 61 at 4, Larsen Decl. ¶ 13.  In addition, "[l]ead Kendra Gasaway provided multiple extra days of one-on-one training for Ms. Richards."  ECF No. 61 at 4, Larsen Decl. ¶ 13.

Billing representatives received "TQA" evaluations from the Total Quality Assurance department, based on the accuracy of their processing of client accounts.  ECF No. 61 at 5, Larsen Decl. ¶ 15.  A passing score is 95% or higher.  ECF No. 61 at 5, Larsen Decl. ¶ 15.  Roughly three weeks after Ms. Richards began working at HRG, Ms. Richards received a TQA score of 61%, which was considered failing, followed the next week by another failing TQA score of 61%.  ECF No. 61 at 5, Larsen Decl. ¶ 16.  Ms. Larsen considered the scores to be "two very bad scores even for a new employee.  Ms. Richards was the worst performing billing

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

1    representative on my team by a long shot, including other new billing

2    representatives."  ECF No. 61 at 5, Larsen Decl. ¶ 16.

3        Ms. Richards contends that her training was confusing and that she had

4    difficulty reading the training manual on the computer screen.  ECF No. 85 at 2,

5    Richards Decl.  ¶¶ 6, 7, 24.  Ms. Richards stated that "I do not feel HRG provided

6    me with proper training to perform my job duties while I worked at HRG."  ECF No.

7    85 at 2, Richards Decl. ¶ 27.  Ms. Richards testified that she needed "more training,

8    but not accommodation."  ECF No. 84-5, Kirby Aff., Ex. C, Richards Dep. at 134:3.

9        During this same time period Ms. Larsen received reports that Ms. Richards

10   was a very difficult colleague.  ECF No. 61 at 5-6, Larsen Decl. ¶ 17.  "She was

11   argumentative, challenging, and combative to her supervisors and trainers.  She was

12   very unreceptive to training and coaching."  ECF No. 61 at 5-6, Larsen Decl. ¶ 17.

13       Ms. Larsen states that based on Ms. Richards' poor TQA scores and her

14   "terrible attitude," Ms. Larsen made the decision to place Ms. Richards on a PIP.

15   ECF No. 61 at 6, Larsen Decl. ¶¶ 17, 18.  Ms. Larsen states that she told Ms. Nelsen

16   that she was placing Ms. Richards on a PIP and instructed Ms. Nelsen to prepare a

17   draft PIP for Ms. Larsen's review and approval.  ECF No. 61 at 6, Larsen Decl. ¶ 18.

18   Ms. Larsen states that "Ms. Nelsen did not make the decision to place Ms. Richards

19   on a PIP.  She did not even make a recommendation to do so."  ECF No. 61 at 6,

20   Larsen Decl.  ¶¶ 18, 28. Ms. Larsen states about the PIP that "The decision solely

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 5

was mine, and was based on Ms. Richards' failing TQA scores and her bad attitude." ECF No. 61 at 6, Larsen Decl. ¶ 18.

Ms. Nelsen finalized the draft PIP and emailed it to Ms. Larsen on February 4, 2015, at 12:52 p.m.  ECF No. 61 at 6, Larsen Decl. ¶ 19.    Also on February 4, 2015, at 1:10 p.m. Ms. Richards emailed a request for her job description to Lindsay Berger, an administrative assistant with HRG's Human Resources department.  ECF No. 60, Nelson Decl., Ex C.  Ms. Richards' email stated:

> I have been working with the Department of Vocational Rehab, (DVR) [sic] now that I'm employed they need a copy of my job description for their records, so they can close my case in 60 days.  If you could e-mail me a copy so I could copy it and send, I would greatly appreciate it.

ECF No. 60, Nelsen Decl., Ex. C.

It is undisputed that the first time that Ms. Richards told any employee at HRG that she was working with DVR was when she sent the February 4th "DVR email" to Ms. Berger.  ECF No. 84-5, Kirby Aff., Ex. C, Richards Dep. 87:9-24; 103:17-22.  Ms. Berger informed Ms. Richards that she needed to get her job description from her supervisor or manager.  ECF No. 60, Ex. C.  Ms. Richards admits that other than the "DVR email" she did not "have any other discussions with anyone at HRG regarding DVR."  ECF No. 60, Ex. E, Richards Dep. 103:19-22.

At 2:47 p.m. on February 4, 2015, Ms. Richards forwarded the "DVR email" exchange between herself and Ms. Berger to Ms. Nelsen.  ECF No. 85 at 3, Richards Decl. ¶ 10; ECF No. 85, Richards Aff., Ex A.  Ms. Nelsen testified that she does not

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

recall ever reading Ms. Richards' forwarded "DVR email" until after Ms. Richards

was terminated.[2]  ECF No. 60 at 7, Nelsen Decl. ¶ 23.  In addition, Ms. Nelsen states

in her declaration that she was not familiar with DVR or its work with disabled

persons until the present lawsuit was filed.  ECF No. 60 at 7, Nelsen Decl. ¶ 24.

On February 6, 2015, Ms. Larsen and Ms. Nelsen met with Ms. Richards to

review the PIP.  *Id.*  ECF No. 61 at 6, Larsen Decl. ¶ 20.  Ms. Larsen explained to

Ms. Richards that HRG would be putting her on a PIP due to her low TQA scores

that she needed to improve.  ECF No. 55-1, Richards Dep. 104:15-21.  The PIP

identified three specific areas of concern regarding Ms. Richards' workplace

performance:  (1) that she had two failed TQA scores, (2) that she was

---

[2] Ms. Richards argues that Ms. Nelsen always responded to emails quickly except

for responding to the "DVR email," from which Ms. Richards infers discriminatory

animus.  However, similar to the handwriting dispute, the Court finds that Ms.

Richards' allegations regarding whether Ms. Nelsen responded to work emails

within one day, or in some circumstances within hours or minutes, is not material

to the resolution of the pending motions and does not raise any genuine issues of

material fact.  ECF No. 86 at 23-24.  Ms. Nelsen stated in her deposition that each

of her work days are different so her response time to different emails can vary.

ECF No. 84-1, Kirby Aff., Ex A, Nelsen Dep. 103:23-25, 104:1.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 7

1    argumentative during training and TQA meetings, and (3) that she did not take

2    ownership of her actions when working the accounts.  ECF No. 60 at 15, Nelsen

3    Decl., Ex. A.  Ms. Richards raised her concerns about the training she had received,

4    which the parties discussed.  ECF No. 84-5, Kirby Aff., Ex. C, Richards Dep.

5    107:23-25, 108:1-5.

6          After reviewing the PIP, Ms. Richards and Ms. Nelsen signed the document.

7    ECF No. 55-1, Richards Dep. 105:9-18.  Someone wrote on the PIP, "Toni

8    [Richards] to provide list of training items to Candice [Nelsen ]."  ECF No. 60 at 19,

9    Nelsen Decl., Ex A.  Ms. Nelsen and Ms. Larsen state that they witnessed Ms.

10   Richards initial the handwritten note at the meeting.  ECF No. 60 at 5-6, Nelsen

11   Decl. ¶ 19; ECF No. 61, Larsen Decl. at ¶ 23.  Ms. Richards asserts that she did not

12   write on the note at the meeting and that her initials were forged after the meeting.

13   ECF No. 55-1, Richards Dep. 125:1-25, 126:1-8.  Ms. Nelsen and Ms. Larsen deny

14   writing Ms. Richards' initials.  ECF No. 60, Nelsen Decl. ¶ 19, ECF No. 61, Larsen

15   Decl. ¶ 23.

16         Ms. Richards submitted evidence from a handwriting expert who found that

17   he was unable to determine whether the initials on the PIP were written by Ms.

18   Richards, Ms. Nelsen, or Ms. Larsen.  E.g., ECF No. 84-4, Kirby Aff., Ex B-2,

19   Green Dep. at 21:1-4.  However, the Court finds the issue of whether Ms. Richards

20   initialed the note is immaterial to her claims of disability discrimination because

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 8

there is ample evidence in the record, and Ms. Richards does not dispute, that Ms. Richards participated in the PIP meeting with Ms. Larsen and Ms. Nelsen and that Ms. Richards had significant reported deficiencies in performing her job.  Therefore, whether those initials are Ms. Richards' initials, which the Court concludes that they are, is not a material fact in resolution of Ms. Richards' claims in the pending motions.

Ms. Richards claims that on February 10, 2015, she and Ms. Nelsen had a conversation initiated by Ms. Nelsen's observation of Ms. Richards limping.  ECF No. 55-1, Richards Dep. 30:23-25, 31:1-9, 32:4-7.  Ms. Nelsen allegedly asked Ms. Richards, "Are you okay?" as Ms. Richards walked past her to a printer.  ECF No. 55-1, Richards Dep. 32:8-9.  Ms. Richards allegedly replied that she was fine, but that she had "bad knees." ECF No. 55-1, Richards Dep. 32:7.  Ms. Nelsen does not recall that this incident occurred and denies that she relayed this incident to Ms. Larsen.  ECF No. 60 at 9, Nelsen Decl. ¶ 31.

The week following the PIP meeting Ms. Richards' TQA score was 77%.  ECF No. 61 at 9, Larsen Decl. ¶ 29.  Ms. Richards' next TQA score was her worse ever at 58%, which was 37 percentage points below a passing score.  ECF No. 61 at 6, Larsen Decl. ¶ 29.

Ms. Larsen continued to receive reports of "Ms. Richards' bad attitude, including continued aggressive and combative behavior."  ECF No. 61 at 9, Larsen

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

Decl. ¶ 30.  Ms. Larsen also received a report from Kaila Roberts in the TQA department that Ms. Richards interrupted a confidential meeting between the TQA department and another billing representative demanding to immediately meet with the TQA department.  ECF No. 61 at 9, Larsen Decl. ¶ 30.  TQA department staff immediately escorted Ms. Richards out of the meeting.  ECF No. 61 at 9, Larsen Decl. ¶ 30.

Ms. Larsen asked Ms. Nelsen for feedback on Ms. Richards.  ECF 84-3, Larsen Dep. 45:8-12.  Ms. Nelsen gave Ms. Larsen her "feedback" regarding Ms. Richards' performance, which Ms. Nelsen asserts included Ms. Richards' TQA scores, her attitude, and her behavior.  ECF No. 84-1, Kirby Aff., Ex. A, Nelsen Dep. 117:18-25, 118:1-10.

Ms. Larsen decided to terminate Ms. Richards' employment effective February 20, 2015, two weeks after the PIP meeting.  ECF No. 61 at 9-10, Larsen Decl. ¶ 31.  Ms. Larsen stated that her decision to terminate Ms. Richards' employment was based on Ms. Richards' failing TQA scores after the PIP meeting, with Ms. Richards' last TQA score being her worse score ever, her continued poor attitude, and Ms. Richards' interruption of a confidential meeting.  ECF No. 61 at 9-10, Larsen Decl. ¶ 31.  Both Ms. Larsen and Ms. Nelsen state in their declarations that Ms. Larsen was the sole decision-maker regarding terminating Ms. Richards'

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

employment.  ECF No. 60 at 8, Nelsen Decl. ¶ 29; ECF No. 61 at 10, Larsen Decl. ¶ 33.

Shortly after being terminated, Ms. Richards called HRG's Human Resources Department and requested a job description for the DVR, specifically informing HRG for the first time that she was disabled.  ECF No. 55-1, Ex A, Richards Dep. 83:1-5; 87:9-24; 103:17-22.  Ms. Richards admits that the first time she had ever indicated to HRG that she was disabled was after she had been terminated.  ECF No. 60, Nelsen Decl., Ex. E, Richards Dep. 100:2-21.  Ms. Richards also admitted in her deposition that she did not link her use of DVR to having any disability.  ECF No. 55-1, Ex A, Richards Dep. 87:3-8; 88:4-16.

Both Ms. Larsen and Ms. Nelsen testified that they had no knowledge that Ms. Richards was disabled, or perceived that Ms. Richards was disabled, while she was working for HRG.  ECF No. 60 at 7, Nelsen Decl. ¶ 22; ECF No. 61 at 8, Larsen Decl. ¶ 25.  Both Ms. Nelsen and Ms. Larsen state that Ms. Nelsen never advised Ms. Larsen that Ms. Richards was disabled, or was utilizing DVR's services.  ECF No. 60 at 7, Nelsen Decl. ¶ 25; ECF No. 61 at 8, Larsen Decl. ¶ 25.

**DISCUSSION**

Ms. Richards does not contend that she was terminated because of her disability.  Rather, Ms. Richards argues that she has raised a genuine issue of material fact as to whether Ms. Larsen or Ms. Nelsen terminated her employment

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

because they perceived her as disabled.  ECF No. 87 at 17-18.  Defendants move to dismiss all of Ms. Richards' claims arguing that she has not supported her case with any evidence.

A moving party is entitled to summary judgment when there are no disputed issues of material fact and all inferences have been resolved in favor of the non-moving party.  *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994); Fed. R. Civ. P. 56(a).  However, if the non-moving party lacks support for a necessary element of their claim, the moving party is entitled to judgment as a matter of law regarding that claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Washington state law is consistent with the federal law summary judgment standard: "A defendant in a civil action is entitled to summary judgment if he can show that there is an absence or insufficiency of evidence supporting an element that is necessary to the plaintiff's claim."  Slack v. Luke, 192 Wash. App. 909, 915, 370 P.3d 49, 53 (2016) (quoting *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.,* 169 Wash.App. 111, 118, 279 P.3d 487 (2012)).

To prevail at the summary judgment stage, a party must establish that a fact cannot be genuinely disputed and that the adverse party cannot produce admissible evidence to the contrary.  Fed. R. Civ. P. 56(c).  Once the moving party has met their burden, the non-moving party must demonstrate that there is probative evidence that

1    would allow a reasonable jury to find in their favor.  *See Anderson v. Liberty Lobby*,

2    477 U.S. 242, 251 (1986).  At the summary judgment stage, the Court does not weigh

3    the evidence presented, but instead assumes its validity and determines whether it

4    supports a necessary element of the claim.  *Id*.  The Court will not presume missing

5    facts, and non-specific facts in affidavits are not sufficient to support or undermine a

6    claim.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S. Ct. 3177, 3189

7    (1990).

8    **I.    ADA and WLAD**

9    Title I of the ADA prohibits discrimination against a qualified individual on

10   the basis of disability.  42 U.S.C. § 12112(a).  To prevail on an ADA claim, a

11   plaintiff must first establish a prima facie case of discrimination by showing he or she

12   (1) has or is perceived as having a disability, (2) is a qualified individual, meaning

13   she can perform the essential functions of her job, and (3) was terminated because of

14   her perceived disability.  *Smith v. Clark Cty. Sch. Dist.,* 727 F.3d 950, 955 (9th Cir.

15   2013).  Similarly, under RCW 49.60, a plaintiff must prove "'that the employee was:

16   [1] disabled, [2] subject to an adverse employment action, [3] doing satisfactory

17   work, and [4] discharged under circumstances that raise a reasonable inference of

18   unlawful discrimination.'"  *Brownfield v. City of Yakima,* 178 Wash. App. 850, 873,

19   316 P.3d 520, 533 (2014)(internal citations omitted).  A plaintiff may proceed under

20   RCW 49.60 if the plaintiff is "perceived" to have a disability.  *See* WAC 162-22-020.

21   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
     AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
     JUDGMENT ~ 13

1    ADA claims and WLAD claims are analyzed using the burden shifting analysis

2    from *McDonnell Douglas Corp.  See McDonnell Douglas Corp. v. Green,* 411 U.S.

3    792, 802, (1973); *see also Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 237 F.3d

4    1080, 1093 (9th Cir. 2001); *Scrivener v. Clark College*, 181 Wn.2d 439, 445, 334

5    P.3d 541, 546 (2014); *Brownfield v. City of Yakima,* 178 Wash. App. 850, 873, 316

6    P.3d 520, 533 (2014).  Once a plaintiff establishes a prima facie case of

7    discrimination, the burden shifts to the defendant to prove a non-discriminatory

8    reason for the adverse employment action.  *McDonnell Douglas Corp.*, 411 U.S. at

9    802.  If defendant does so, the burden then shifts back to plaintiff to show

10    defendant's reason was a pretext for discrimination.  *Id* at 804.

11              **a.  Perception of Disability**

12    To survive summary judgment on either her ADA or WLAD claim, Ms.

13    Richards must provide sufficient evidence to raise a genuine issue of material fact

14    whether she was terminated because of disability.  *See Deppe,* 217 F.3d at 1265.

15    Further, Ms. Richards must demonstrate that there is probative evidence that would

16    allow a reasonable jury to find in her favor.  *See Anderson V. Liberty Lobby,* 477 U.S.

17    242,251 (1986).

18    Ms. Richards has not argued, nor has she submitted any evidence in support,

19    that she was disabled or terminated because of a disability.  In fact, Ms. Richards

20    concedes that she never told any HRG employee that she had a disability until after

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 14

1   her termination.  ECF No. 55-1, Ex A, Richards Dep. 83:1-5; 86:25 to 87:17.

2   Instead, Ms. Richards argues that she was terminated because she was perceived as

3   disabled by Ms. Larsen and Ms. Nelsen.  In order to survive summary judgment, Ms.

4   Richards must demonstrate that there is probative evidence from which a reasonable

5   jury could find that the defendants perceived her as having a disability, which is a

6   necessary element of Ms. Richards' prima facie case of disability discrimination.

7        Ms. Richards relies on two events as her entire basis for concluding that

8   Defendants perceived her as disabled:  the "DVR email," which was sent to Ms.

9   Nelsen, ECF No. 84-5, Kirby Aff., Ex C, Richards Dep. 27:14, and Ms. Richards'

10  own comment about having "bad knees."  ECF No. 84-5, Kirby Aff., Ex C, Richards

11  Dep. 28:8-11.  Ms. Richards concedes that she made the "bad knees" comment only

12  to Ms. Nelsen when Ms. Nelsen asked her if she was okay after Ms. Nelsen observed

13  her limping.  ECF No. 84-5, Kirby Aff., Ex C, Richards Dep. 32:4-15.  However Ms.

14  Richards imputes this knowledge also to Ms. Larsen, without any evidence of the

15  connection.

16       Furthermore, Ms. Richards has not provided any evidence to refute that Ms.

17  Nelsen had no authority to terminate Ms. Richards' employment, despite providing

18  "feedback" to Ms. Larsen about Ms. Richards as her direct supervisor.  Ms. Richards

19  also has not provided any evidence to refute that Ms. Larsen was the sole person

20  with the authority to terminate Ms. Richards' employment. ECF No. 61 at 2, 3;

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 15

1   Larsen Decl. ¶¶ 4, 7.  Instead, Ms. Richards infers that Ms. Nelsen's responsibility to

2   provide "feedback" to Ms. Larsen equates to decision-making authority regarding

3   termination.  No evidence supports this conclusion, and Defendants' evidence flatly

4   refutes the inference.

5        Ms. Nelsen stated in her declaration that she had no knowledge that Ms.

6   Richards was disabled and did not perceive that Ms. Richards was disabled while

7   she was working for HRG.  ECF No. 60 at 7, Nelsen Decl. ¶ 22.  Ms. Larsen testifies

8   that she was not aware that Ms. Richards had any disability until after she was

9   terminated.  ECF No. 61 at 8, Larsen Decl. ¶ 25.

10       Ms. Richards has presented no evidence that Ms. Larsen was informed of

11  either the "DVR email" or the "bad knees" comment on which Ms. Richards relies as

12  providing notice of her disability.  Instead, Ms. Richards attempts to weave a daisy

13  chain of inferences stemming from Ms. Nelsen's exposure to two vague references to

14  disability:  the "DVR email," and an alleged comment by Ms. Richards to Ms. Nelsen

15  regarding having "bad knees."  From those two vague references directed only to Ms.

16  Nelsen, Ms. Richards attempts to loop Ms. Larsen and all of HRG into a "perception"

17  of Ms. Richards as disabled.

18       Ms. Richards argues that the temporal connection of events creates a genuine

19  issue of material fact as to whether Defendants perceived her as disabled.  Causation

20  can be inferred from the proximity in time between the protected action and the

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 16

allegedly unlawful discharge. *Passantion v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000).  To support an inference of discriminatory motive, the termination must have occurred "fairly soon" after the employee's protected activity. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).  For example, the Ninth Circuit held a three-month lapse between protected activity and an adverse employment action was "sufficiently probative of a causal link" to establish a prima facie case. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

In this case, viewing the evidence in the light most favorable to the plaintiff, the timing of events provides no support that Ms. Richards was terminated for anything related to disability, including being "perceived" as disabled.  Ms. Richards contends that she informed Ms. Nelsen that she was working with DVR by sending the "DVR email" which was received by Ms. Nelsen on February 4, 2015, at 2:47 p.m.  ECF No. 60, Nelsen Decl., Ex C.  Ms. Richards was placed on the PIP on February 6, 2015, and had two more failing TQA scores after February 6, 2015.  ECF No. 60 at 8, Nelsen Decl. ¶ 26.  Ms. Richards contends that she informed Ms. Nelsen that she had bad knees on or about February 10, 2015.  ECF No. 55-1, Ex A, Richards Dep. 32:4-7.  Therefore, even the "bad knees" comment was made sometime after Ms. Richards was placed on the PIP.  Ms. Richards was terminated from employment on February 20, 2015.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 17

Ms. Richards' theory would require a jury to disbelieve Ms. Larsen's and Ms. Nelsen's sworn testimony that Ms. Nelsen did not give Ms. Larsen information regarding either the "DVR email" or the "bad knees" comment prior to Ms. Richards' termination, as well as require the jury to disregard the substantial corroborating evidence that reveals a different series of events, which the Court finds to have occurred:

1.  Ms. Richards receives her first failing TQA scores in approximately the third week of her employment in January 2015.  ECF No. 60 at 4, Nelsen Decl. ¶ 12.

2. Ms. Nelsen receives reports from the TQA team, billing lead, and trainers regarding Ms. Richards being "argumentative, challenging, combative to her supervisors and trainers, and [] very unreceptive to training and coaching."  ECF No. 60 at 4, Nelsen Decl. ¶ 13.

3. Ms. Nelsen provides "feedback," but according to Ms. Larsen, "Ms. Nelsen did not make the decision to place Ms. Richards on a PIP.  She did not even make a recommendation to do so."  ECF No. 61 at 6, Larsen Decl.  ¶¶ 18, 28.

4. Ms. Larsen decides to place Ms. Richards on a PIP and directs Ms. Nelsen to draft a PIP for Ms. Larsen's review and approval.  ECF No. 60 at 4, Nelsen Decl. ¶ 14.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 18

5. Ms. Nelsen emails Ms. Larsen a final draft of Ms. Richards' PIP on February 4, 2015, at 12:52 p.m.  ECF No. 60 at 5, Nelsen Decl. ¶ 15.

6. Ms. Richards emails the "DVR email" to Ms. Nelsen on February 4, 2015, at 2:47 p.m., days after Ms. Larsen had informed Ms. Nelsen that she was placing Ms. Richards on a PIP and one hour and fifty-five minutes after Ms. Nelsen emailed Ms. Larsen the draft PIP.  ECF No. 60 at 7, Nelsen Decl. ¶ 23; ECF No. 60, Nelsen Decl., Ex C.

7. Ms. Nelsen does not read the "DVR email" until after Ms. Richards has been terminated.  ECF No. 60 at 7, Nelsen Decl. ¶ 23.

8. Ms. Nelsen never discusses or forwards the "DVR email" to Ms. Larsen.  ECF No. 60 at 7, Nelsen Decl. ¶ 25.

9. After the February 6, 2015, PIP meeting, Ms. Richards receives two more failing TQA scores:  77% and 58%.  ECF No. 60 at 8, Nelsen Decl. ¶ 26.

10. Ms. Richards contends that she told Ms. Nelsen that she has "bad knees" on or about February 10, 2015, in response to a comment by Ms. Nelsen regarding Ms. Richards' limping.  ECF No. 55-1, Ex A, Richards Dep. 30:23-25, 31:1-9.

11. Ms. Richards interrupts a confidential TQA meeting on February 18, 2015. ECF No. 56-1, Ex H, Larsen Dep. 32:11-25.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 19

12. Ms. Larsen informs Ms. Nelsen on February 19 or 20, 2015, of her decision to terminate Ms. Richards.  ECF No. 56-1, Ex. H, Larsen Dep. 32:1-3.

13. On February 20, 2015, Ms. Larsen terminates Ms. Richards in a meeting where Ms. Nelsen is present as a witness.  ECF No. 60 at 8. Nelsen Decl. ¶¶ 27, 28.

14. Ms. Nelsen has no role in making the decision to terminate Ms. Richards' employment.  ECF No. 60 at 8, Nelsen Decl. ¶ 29.

15. During Ms. Richards' employment period Ms. Nelsen is not aware that Ms. Richards was disabled and is unaware of what DVR represents.  ECF No 60 at 8, Nelsen Decl. ¶ 30.

Ms. Richards also argues that even if Ms. Nelsen was not the official decision-maker, Ms. Richards can still establish HRG liability under a "cat's paw" theory. Ms. Richards argues that a rational jury could find that Ms. Nelsen's perception of Ms. Richards' disability was the causal factor in HRG's decision to terminate Ms. Richards' employment even though Ms. Nelsen did not have the authority to terminate Ms. Richards.

The evidence Ms. Richards cites to support the "cat's paw" theory centers on Ms. Nelsen's assisting Ms. Larsen with administrative tasks.  None of the evidence supports that Ms. Nelsen influenced or took an active role in Ms. Larsen's decision

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 20

to terminate Ms. Richards.  The evidence supports the opposite conclusion.  Ms.

Nelsen did not make a recommendation to Ms. Larsen that Ms. Richards be

terminated.  ECF No. 61 at 10, Larsen Decl. ¶ 33.  Ms. Larsen was the sole decision-

maker regarding Ms. Richards' termination.  ECF No. 61 at 10, Larsen Decl. ¶ 33.

Although Ms. Nelsen drafted Ms. Richards' termination letter and informed

HRG's Human Resources department that Ms. Richards had been terminated, Ms.

Larsen and Ms. Nelsen stated that Ms. Nelsen had no authority to terminate,

discipline, or place an employee, including Ms. Richards, on a PIP.  ECF No. 61 at

3, Larsen Decl. ¶ 8.  Ms. Nelsen's actions were at Ms. Larsen's direction as her

administrative assistant.  ECF No. 61 at 2, 6, 9, Larsen Decl. ¶¶ 5, 7-8, 18-19, 28.

Any paperwork that Ms. Nelsen prepared regarding the termination was prepared at

Ms. Larsen's direction.  ECF No. 61 at 10, Larsen Decl. ¶ 32.  Further, Ms. Larsen

revised the draft termination letter, indicating that Ms. Larsen held the actual

authority to terminate.  ECF No. 86 at 14.  Ms. Nelsen only signed Ms. Richards'

termination letter as her "Supervisor," whereas Ms. Larsen signed as the "Director."

ECF No. 84-3, Kirby Aff., Ex. B, Larsen Dep. 38:8-9.

The evidence shows that at the time of Ms. Richards' termination, Ms. Larsen

was not aware that Ms. Richards was disabled or had utilized the services of DVR.

ECF No. 61 at 8, 11, Larsen Decl. ¶¶ 25, 35.  Prior to Ms. Richards' termination,

Ms. Larsen had not received a copy of the "DVR email" nor been told about it by

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 21

Ms. Nelsen.  ECF No. 61 at 8, Larsen Decl. ¶ 26.  Furthermore, Ms. Larsen decided to place Ms. Richards on the PIP prior to Ms. Richards' having sent the "DVR email" to either HRG's HR department or Ms. Nelsen.  ECF No. 61 at 8, Larsen Decl. ¶ 27; ECF No. 61, Larsen Decl. Ex A, C.

Even if Ms. Nelsen had perceived Ms. Richards as disabled, which the Court does not find, the evidence does not support that Ms. Nelsen's perception was ever communicated to Ms. Larsen or was in any way a causal factor in Ms. Richards' termination.  Therefore, Ms. Richards' attempt to establish "cat's paw" liability fails.

Although Ms. Richards has submitted a significant amount of evidence relating to whether she received sufficient training or whether all co-workers thought that she was a difficult colleague, Ms. Richards has submitted no evidence raising a genuine issue of whether a reasonable jury could conclude that either Ms. Nelsen or Ms. Larsen or anyone else at HRG perceived Ms. Richards as disabled.  Instead, Ms. Richards submitted evidence that emphasizes inconsistencies in her training, or the novelty of her assigned projects, or whether she initialed the PIP report.  ECF No. 85; ECF No. 85, Richards Aff. ¶¶ 6-8, 18, 24, 27, Ex C.   Ms. Richards submitted testimony from Sarah Franzen regarding training Ms. Richards on a project that was new to HRG and that she did not have trouble training Ms. Richards in the basic overview of information.  ECF No. 84-17, Kirby Aff, Ex N, Franzen Dep. 46:16-22; 49:15-25.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 22

Ms. Richards submitted deposition testimony of Mandi Blankenship, a co-worker, regarding that Ms. Blankenship felt that her training at HRG was confusing. ECF No. 84-18, Kirby Aff. Ex. O, Blankenship Dep. 17:22-25; ECF No. 84-19, Kirby Aff. Ex. P, Blankenship Aff. at 2-3. Ms. Blankenship also testified that she did not have any problems getting along with Ms. Richards at work or saw Ms. Richards' acting argumentative or disrespectful to her supervisors. ECF No. 84-18, Kirby Aff. Ex. O, Blankenship Dep. 87:4-16.

Ms. Richards submitted excerpts from Jason Sansom who did a vocational assessment of Ms. Richards at DVR after her termination by HRG. ECF No. 84-22, Kirby Aff. Ex. S, Sansom Dep. 46:6-9. After his assessment of Ms. Richards, he concluded that she was capable of full-time employment. ECF No. 84-22, Kirby Aff. Ex. S, Sansom Dep. 52:1-2. After his two week assessment of Ms. Richards, Mr. Sansom evaluated that she was capable of accepting directions and feedback and performing her tasks at Goodwill. ECF No. 84-22, Kirby Aff. Ex. S, Sansom Dep. 63:17-25.

None of the evidence that Ms. Richards submitted regarding training or co-workers' experience or views is relevant to the issue of whether HRG regarded Ms. Richards as disabled, which is a required element of Ms. Richards' prima facie case. Lack of training, or a co-worker's experience with Ms. Richards, only would be relevant to prove that Defendants' proffered legitimate reason for terminating Ms.

1    Richards' employment was pretext, if Plaintiff had met her burden of to demonstrate

2    that a reasonable jury could find that Defendants perceived her as disabled.  If Ms.

3    Richards had met that burden of production, then the burden would have shifted to

4    Defendants to proffer a legitimate, nondiscriminatory reason for her termination.  *See*

5    *McDonnell Douglas Corp.*, 411 U.S. 792 (1973).  However, Ms. Richards failed to

6    provide sufficient evidence to support her prima facie case, specifically any evidence

7    upon which a reasonable jury could conclude that Defendants perceived her as

8    disabled.  Therefore, the burden shifting model of *McDonnell-Douglass* is not

9    triggered.

10        Because Ms. Richards fails to raise a genuine issue of material fact that

11    Defendants perceived Ms. Richards as disabled, an essential element of her case, the

12    Court holds that Ms. Richards has failed to meet her burden under Fed. R. Civ. P.

13    56(e) and grants Defendants' motion for summary judgment on Ms. Richards' ADA

14    and WLAD claims.  However, the Court will address the parties' remaining

15    arguments to supplement the record.

16            **b.  Non-Discriminatory Reason for Termination**

17        Even if a reasonable jury could find that Ms. Richards had met her burden

18    under Fed. R. Civ. P. 56, Defendants have proffered legitimate, nondiscriminatory

19    reasons for Ms. Richards' termination.  Under the ADA, when an employee

20    establishes a prima facie case of disability discrimination, the burden of production

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 24

shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglass Corp*., 411 U.S. 792, 802 (1973). "The employer need not persuade the court that it was actually motivated by the proffered reasons:  it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Yartzoff*, 809 F.2d at 1376 (internal quotations omitted). "Thus [the defendant] need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." *Id.* (internal quotations omitted).

Defendants have produced ample evidence of non-discriminatory reasons to support that Ms. Richards' termination was justified and not motivated by discriminatory animus.  Each of Ms. Richards' TQA scores was below the passing score, and her TQA scores worsened the longer that she worked.  ECF No. 60 at 8, Nelsen Decl. ¶¶ 26-27.  Defendants submitted testimony that Ms. Richards was a difficult colleague:  difficult to work with, argumentative, challenging, and combative to her supervisors and trainers.  ECF No. 61 at 5-6, Nelsen Decl. ¶ 17; ECF No. 62 at 4, Gasaway Decl. ¶ 12.  Defendants submitted testimony that the final incident prior to Ms. Richards' termination was her unannounced interruption of a confidential TQA department meeting, which Ms. Larsen characterized as "inappropriate."  ECF No. 56-1, Ex H, Larsen Dep. 32:9-13.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 25

1    The Court finds that Defendants' evidence supports that HRG had sufficient

2    non-discriminatory reasons for terminating Ms. Richards' employment.

3        **c. Plaintiff's Burden to Show Pretext**

4        Because Defendants have provided legitimate nondiscriminatory reasons for

5    Ms. Richards' termination, the burden shifts back to Ms. Richards to produce

6    evidence that HRG's proffered reasons for terminating her employment were a

7    pretext for discrimination.  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169 (9th Cir.

8    2007).  A plaintiff can prove pretext in two ways: "(1) indirectly, by showing that the

9    employer's proffered explanation is "unworthy of credence" because it is internally

10   inconsistent or otherwise not believable, or (2) directly, by showing that unlawful

11   discrimination more [than] likely motivated the employer."  *Id at 1170* (quoting

12   *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000).  When evidence

13   of pretext is circumstantial, rather than direct, the plaintiff must present specific and

14   substantial facts showing that there is a genuine issue for trial.  *Id*.

15       Ms. Richards relies on the following facts to support that Defendants'

16   proffered reasons for termination are pretext: (1) Ms. Blankenship testified that she

17   did not observe Ms. Richards having any difficulties with trainers or coworkers, (2)

18   Ms. Franzen testified that she experienced no difficulties with providing peer-to-peer

19   training to Ms. Richards, and (3) Ms. Richards did not demonstrate a combative

20   attitude when she was working for Goodwill Industries after HRG terminated her

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 26

employment.  ECF No. 87 at 27, 28.  However, whether one co-worker did not

observe Ms. Richards' problems, or whether one peer did not experience problems

training Ms. Richards, or whether Ms. Richards performed adequately at Goodwill

Industries in a test environment after termination, does not refute Defendants'

proffered reasons for termination based on Ms. Richards' poor performance at HRG.

The Court finds that Ms. Richards has failed to raise a genuine issue of

material fact that Defendants' proffered nondiscriminatory reasons for terminating

Ms. Richards are pretextual.  Ms. Richards has failed to meet her burden to provide

evidence to support her prima facie case of disability discrimination and has failed to

raise a genuine issue of material fact whether Defendants' proffered reasons for

legitimate, nondiscriminatory reasons are pretext.  Therefore, summary judgment for

Defendants is appropriate and Ms. Richards' claims under the ADA and WLAD are

dismissed with prejudice.

## II.    STATE LAW CLAIMS

In light of the considerable expenditure of time and resources that the parties

and the Court have expended on resolving the federal claim and companion state law

claim in this matter, the Court will extend supplemental jurisdiction pursuant to 28

U.S.C. § 1337 over the remaining state law claims, which all are based on the same

underlying facts.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 27

### a. Wrongful Discharge in Violation of Public Policy

Ms. Richards claims that her wrongful termination violated public policy because the termination was for her use of the DVR or for being perceived as disabled. Defendants argue, based on the same reasons as above, that Ms. Richards' claim for wrongful discharge in violation of public policy should be dismissed.

To establish a claim for wrongful discharge of public policy, a plaintiff must establish: (1) the existence of a clear public policy; (2) that discouraging the conduct in which they engaged would jeopardize the public policy; (3) that the public policy linked conduct caused the dismissal; and (4) the defendant cannot offer an overriding justification for the dismissal. *Gardner v. Loomis Armored Inc.*, 128 Wn.2d 931, 941, 913 P.3d 377, 382 (1996).

If the non-moving party lacks support for a necessary element of their claim, the moving party is entitled to judgment as a matter of law regarding that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At the summary judgment stage, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 28

Defendants do not dispute that the public policy at issue is Ms. Richards' alleged use of DVR services.  However, Defendants argue that Ms. Richards failed to produce any evidence that HRG terminated her employment because she used those DVR services.  The Court agrees.

The Court relies on the same evidence and analysis discussed previously to conclude that HRG did not terminate Ms. Richards based on her use of DVR services or based on a perception of her as disabled.  The Court finds that Ms. Richards has failed to meet her burden regarding her prima facie case and failed to raise a genuine issue of material fact that the Defendants wrongfully discharged her in violation of public policy.  Therefore, the Court grants the Defendants' motion for summary judgment on this claim.  Ms. Richards' claim of Wrongful Discharge in Violation of Public Policy is dismissed with prejudice.

### b.  Outrage and Intentional Infliction of Emotional Distress

Relying on the same factual allegations as her disability discrimination claims, Ms. Richards alleges a cause of action for outrage and intentional infliction of emotional distress.  ECF No. 1 at 16-17.

In Washington, the tort of outrage has three elements that must be proved by the plaintiff:  "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  Kloepfel v Bokor, 149 Wash.2nd 192, 195-96 (2003) (en banc)(citing

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 29

*Reid v. Pierce County,* 136 Wash.2d 195, 202 (1998)).  "Any claim of outrage must be predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Strong v. Terrell</u>, 147 Wash. App. 376, 385, 195 P.3d 977, 982 (2008) (citing *Kloepfel,* 149 Wash.2d at 196, 66 P.3d 630 (emphasis omitted)).

   If the non-moving party lacks support for a necessary element of their claim, the moving party is entitled to judgment as a matter of law regarding that claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  At the summary judgment stage, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

   The first element that Ms. Richards would have to prove in her prima facie case of outrage or intentional infliction of emotional distress is that Defendants acted with "extreme and outrageous conduct."  *See id.*  Ms. Richards' claim relies on Defendants' perceiving Ms. Richards as disabled and placing her on a PIP and then terminating her employment because of their perception of her as disabled.  Ms. Richards relies on two alleged precipitating events:  the "DVR email" and Ms. Richards' alleged comments about having "bad knees."

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 30

1    Even viewing the evidence in the light most favorable to the plaintiff, as this

2    Court must do at the summary judgment stage, the Court concludes that no

3    reasonable jury could find that Defendants' actions of placing Ms. Richards on a PIP

4    or terminating her employment rise to a level of "extreme and outrageous conduct."

5    Ms. Richards has submitted no evidence whatsoever that Ms. Nelsen or Ms. Larsen

6    placed her on the PIP or terminated her because of a perception of disability, or ever

7    berated Ms. Richards, called her names, threatened her, or behaved in any way that

8    was not professional.

9        Based on Ms. Larsen's and Ms. Nelsen's declarations regarding their own

10   personal involvement as caretakers for family members with severe disabilities, Ms.

11   Richards' accusations about Ms. Larsen and Ms. Nelsen discriminating against her

12   based on a disability would be more likely to qualify as "extreme and outrageous

13   conduct" than any of Ms. Larsen's or Ms. Nelsen's alleged actions involving Ms.

14   Richards.

15       Plaintiff has not submitted any evidence supporting that Defendants' conduct

16   was "extreme" or "outrageous."  Therefore, the Court finds that Ms. Richards has

17   failed to meet her burden in establishing a necessary element of her prima facie case

18   regarding the state law claims of outrage and intentional infliction of emotional

19   distress and grants Defendants' motion for summary judgment of this claim which is

20   dismissed with prejudice.

21   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
     AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
     JUDGMENT ~ 31

c.  **Negligent Infliction of Emotional Distress**

Ms. Richards' fourth cause of action is negligent infliction of emotional distress.

In order to prove a claim for negligent infliction of emotional distress in Washington, a plaintiff must prove "negligence, that is, duty, breach of the standard of care, proximate cause, and damages, and prove the additional requirement of objective symptomatology." <u>Strong v. Terrell</u>, 147 Wash. App. 376, 387, 195 P.3d 977, 982 (2008) (internal citations omitted).  In the workplace, a negligent infliction of emotional distress cannot be a "result from an employer's disciplinary acts or its response to a workplace 'personality dispute.'" *Id.* (citing *Chea v. Men's Wearhouse, Inc.,* 85 Wash.App. 405, 410, *review denied,* 134 Wash.2d 1002 (1998)).

The moving party is entitled to summary judgment when there are no disputed issues of material fact when all inferences are resolved in favor of the non-moving party.  *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1467, 1471 (9th Cir. 1994); Fed. R. Civ. P. 56(c).  If the non-moving party lacks support for a necessary element of their claim, the moving party is entitled to judgment as a matter of law regarding that claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In this case, Defendants have provided sufficient evidence that Ms. Richards' placement on a PIP and eventual termination resulted from her failure to perform her

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 32

1  job adequately, as well as her aggressive behavior with co-workers or "personality

2  disputes."  Ms. Richards has failed to provide any evidence to support the necessary

3  element of her claim that Defendants breached any duty that they owed to her or that

4  they fell below the standard of care in any way.

5      Therefore, the Court finds that Ms. Richards has failed to meet her burden

6  regarding a necessary element of her claim of negligent infliction of emotional

7  distress, and the Court grants Defendants' motion for summary judgment on that

8  claim.  Ms. Richards' claim for negligent infliction of emotional distress is

9  dismissed with prejudice.

10      **d.  Negligent Supervision and Retention by HRG**

11      Ms. Richards' fifth cause of action is negligent supervision or retention

12  regarding HRG's retaining and supervising Ms. Larsen and Ms. Nelsen.  ECF No. 1

13  at 18.  Ms. Richards alleges that Ms. Larsen and Ms. Nelsen displayed "abusive and

14  hostile conduct" toward Ms. Richards and were "negligent, unreasonable, and

15  careless."  ECF No. 1 at 18.

16      To support a claim for negligent supervision and retention under Washington

17  state law, a plaintiff must prove that "(1) the employer knew, or in the exercise of

18  ordinary care, should have known of the employee's unfitness before the occurrence

19  and (2) retaining the employee was a proximate cause of the plaintiff's injuries."

20  *Richards v. Am. Med. Response Nw. Inc.*, 172 Wash. App. 1022 (Div II 2012).

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 33

The moving party is entitled to summary judgment when there are no disputed issues of material fact when all inferences are resolved in favor of the non-moving party. *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1467, 1471 (9th Cir. 1994); FED. R. CIV. P. 56(c). If the non-moving party lacks support for a necessary element of their claim, the moving party is entitled to judgment as a matter of law regarding that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In this case, Ms. Richards has failed to provide any evidence that Ms. Larsen and Ms. Nelsen displayed any "abusive and hostile conduct" toward Ms. Richards or any evidence that either Ms. Larsen or Ms. Nelsen was unfit or "negligent, unreasonable, and careless" in their dealings with Ms. Richards.

The Court finds that Ms. Richards has failed to provide sufficient evidence to establish an element of her claim and fails to meet her burden at the summary judge stage. Therefore, the Court grants the HRG's summary motion on Ms. Richards' claim for negligent retention or supervision, which is dismissed with prejudice.

### III. Ms. Richards' Motion for Partial Summary Judgment Regarding Defendants' Affirmative Defenses, ECF No. 48

Although the Court has found that Defendants' Motion for Summary Judgment, ECF No. 53, should be granted and all of Plaintiff's claims, including her state law claims, should be dismissed with prejudice, the Court will analyze Ms.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 34

Richards' motion for partial summary judgment regarding Defendants' sixth affirmative defense of after-acquired evidence to complete the record in this case. ECF No. 48 at 2.

In the first amended answer, Defendants pleaded the after-acquired evidence defense as follows:

> [A]fter acquired evidence of Plaintiff Toni Richards' wrongdoing demonstrates that she would have been terminated for legitimate reasons had Defendant HRG known about the wrongdoing. Such wrongdoing includes, but is not limited to, misrepresentations in Plaintiff's employment application materials, threats made to HRG employees, and threats to HRG clients to undermine and impair their business relationships.

ECF No. 28 at 8-9.

After Ms. Richards' termination, Defendants allege that they discovered evidence of criminal history that Ms. Richards failed to include on her employment application. In addition, after her termination, among other conduct that Defendants allege as offensive, Ms. Richards left a voicemail to Ms. Nelsen, her direct supervisor, threatening to "pull out" HRG clients and threatening to send letters to HRG clients in order to have the clients cease their business with HRG. ECF No. 51-7, Kirby Aff. Ex J at 000713. Ms. Richards stated in the voice mail, "[Y]ou're

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 35

going to go down hard and fast now because you fired someone with a disability."
ECF No. 51-7, Kirby Aff. Ex J at 000713.

Ms. Richards argues that summary judgment of Defendant's affirmative
defense is appropriate because (1) HRG fails to provide evidence showing that HRG
would have discharged Ms. Richards for not fully disclosing her criminal
background in her employment application; and (2) that Ms. Richards' post-
termination misconduct was due solely to her allegedly unlawful termination and
therefore should not be considered. Ms. Richards also argues that the Court should
not admit evidence of Ms. Richards' texts and voice mails, including alleged threats
against Ms. Nelsen or HRG, under Fed. R. Evid. 403 because their probative value is
outweighed by their prejudicial effect.

Although an evidentiary issue arguably should be addressed in a motion in
limine or motion to strike rather than in a motion for summary judgment, the Court
will address Ms. Richards' objection now and finds that Fed. R. Evid. 403 does not
bar admission of Ms. Richards' post-termination conduct. Ms. Richards' post-
termination conduct has significant probative value in this case as it relates to
Defendants' contentions that Ms. Richards was terminated in part because she was
aggressive and a difficult employee. Any prejudicial effect is the result of Ms.
Richards' own words and actions. Therefore, the Court overrules any objection to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 36

admission of evidence of Ms. Richards' post-termination conduct on the basis of Fed. R. Evid. 403.

The burden of proof regarding after-acquired evidence is on the employer. *O'Day v. McDonnell Douglas Helicopter Co*., 79 F.3d 756, 759.  The Ninth Circuit held that "if an employer discovers that the plaintiff committed an act of wrongdoing and can establish that the 'wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge,' the employer does not have to offer reinstatement or provide front pay, and only has to provide backpay 'from the date of the unlawful discharge to the date the new information was discovered,'" <u>*O'Day v. McDonnell Douglas Helicopter Co*</u>., 79 F.3d 756, 759 (9th Cir. 1996)(citing *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352 (1995)(internal citations omitted)). The employer must establish both that he could have terminated an employee for the after-acquired information and that he would have terminated the employee.  *Id.*

At the summary judgment stage, Defendants must provide sufficient evidence to demonstrate a genuine issue of material fact that they would have terminated Ms. Richards for her incomplete and inaccurate answers on her employment application,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 37

as well as for her post-termination conduct involving allegedly derogatory and threatening telephone calls and text messages.

When Ms. Richards was hired with HRG, she completed and signed an employment application. ECF No. 51-4, Kirby Aff., Ex D. The application included the question: "Have you ever been convicted of any felony or misdemeanor criminal offenses? If yes, please explain the conviction." ECF No. 51-4, Kirby Aff., Ex D at 00006. Ms. Richards marked, "yes," and explained, "misdomanor [sic] with ex-boyfriend." ECF No. 51-4, Kirby Aff., Ex D at 00006.

Ms. Richards signed the employment application, which stated "If, upon investigation anything contained in this application is found to be untrue, I understand I will be subject to dismissal at any time during the period of employment." ECF No. 51-4, Kirby Aff., Ex D at 00006; ECF No. 20, Garcea Decl., Ex. 3 at 00006. After Ms. Richards' employment was terminated, Defendants discovered that Ms. Richards' response regarding her criminal history was untrue because she had failed to disclose five separate additional criminal convictions. ECF No. 20, Garcea Decl., Ex. 2.

In her statement of facts supporting partial summary judgment, Ms. Richards contends that Ms. Richards was not asked questions regarding her criminal history during her interviews with HRG or whether she previously had been involuntarily terminated from employment. ECF 50 at 2. The Court does not find Ms. Richards'

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 38

argument persuasive as to whether Ms. Richards was truthful on her written

employment application.

During discovery, Defendants produced the following relevant documents

with regards to four former employees who had issues regarding accuracy on their

employment applications or undisclosed criminal history.  Those documents

included:  (1) applications for employment, (2) background checks from Precise

Hire reflecting a crime, or more severe crimes, than disclosed on the employee's

application, (3) adverse action notification letters asserting that HRG could not hire

or rehire the employee "in part" due to information received from the Precise Hire

background check, and (4) evidence of the employee's immediate termination.  ECF

No. 49-1, Kirby Aff, Ex E.

Ms. Richards contends that none of the employment records produced by

HRG expressly states that HRG terminated the employee for misrepresentation of

the criminal history in application materials.  However, Ms. Richards takes out of

context quotes from the paperwork for the four employees.  For example, for support

of her argument Ms. Richards cites to Ms. Chew's records for the statement

"Employee failed background check and was terminated.  Not eligible for rehire."

ECF 49, Kirby Aff., Ex E at 000637-640.  Ms. Richards misses the point.

The language "failed background check and was terminated" supports

Defendants' position that they have a policy of checking employees' backgrounds

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 39

and terminating employees who have criminal history, not that Ms. Chew was

terminated for an unrelated reason.  This exhibit is not supportive of Ms. Richards'

allegations that the Defendants do not enforce their policy.

Similarly, Ms. Richards' submission and reference to Ms. Hobbs'

employment records support Defendants' position that they conduct background

checks and "release" employees who have unreported criminal history.  ECF No. 49-

2, Kirby Aff., Ex F at 001093 (noting that the employee "was released until record is

cleared in courts."); ECF No. 49-3, Ex G at 001239 (noting that she would not be

hired due to a background check).  The Court finds that Ms. Richards' interpretation

of the history of the four former employees is not accurate and is refuted by the

evidence submitted by HRG.

Ms. Richards also submits in support of her motion for partial summary

judgment excerpts from her deposition indicating that she had not included various

criminal charges on her employment application because "these are so old, they

didn't cross my mind."  ECF 51-1, Kirby Aff, Ex A at 173:23.  Ms. Richards'

admission in her deposition further supports that her response on her employment

application was incomplete and inaccurate, regardless of the reason for the

inaccuracies.

Defendants submitted sufficient evidence to raise a genuine issue of material

fact regarding whether HRG has a policy of terminating employees for failing to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 40

accurately complete their employment applications and failing to disclose all of their

criminal history.  For example, Kris English, who was the acting Chief Financial

officer during the entire time that Ms. Richards was employed at HRG, states that

the HRG Employee Handbook includes that "'acts of dishonesty' are a type of

conduct 'that will not be permitted and which may lead to disciplinary action up to

and including termination.'"  ECF No. 83, English Decl. ¶ 5.  Kris English also

states that "HRG's general practice is to terminate (and not re-hire) employees who

lie about their criminal history on their application."  ECF No. 83, English Decl. ¶ 6.

       Kris English considers Ms. Richards' misrepresentations on her employment

application to violate the employees' code of conduct at HRG, which is another

basis for termination.  ECF No. 83, English Decl. ¶ 5 (citing Ex A).  The Employee

Handbook is entitled, "Employee Conduct and Work Rules," and states that HRG

has a

>  a policy regarding the standards of conduct it expects from its
> employees that identifies the types of conduct that will not be permitted
> and which lead to disciplinary action up to and including termination.
> . . . Falsifying or making a material omission on an employment
> application or HRG records.

ECF No. 83, English Decl., Ex A at 25, 00386.

       Denice Robertson, the current Director of Human Resources for HRG, states

that each of the four former employees was terminated, or became ineligible for

rehire if they already had been terminated, at the time that HRG discovered the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 41

undisclosed criminal history or inaccuracies on their employment applications.  ECF No. 82, Robertson Decl. ¶¶ 6-9.  As Kris English states:

> Had HRG discovered, during the course of her employment, that Ms. Richards falsified her employment application by omitting pertinent information relating to her criminal history, she would have been immediately terminated.  Additionally, had HRG learned during the course of Ms. Richards' employment that she had an extensive criminal history beyond what was disclosed in her employment application and that she lied about, including crimes of violence, she would have been terminated.

ECF No. 83 at, English Decl. ¶ 7.

The Court finds that Defendants have raised a genuine issue of fact whether they have a policy to terminate employees who are not truthful on their employment applications, and whether HRG enforces the policy.

The Court also does not find Ms. Richards' argument that her post-termination misconduct is not relevant is unavailing.  Ms. Richards submitted the transcript of her post-termination voice mail to Ms. Nelsen to support her motion for partial summary judgment[3].  Ms. Richards' statements in the voice mail regarding how she is going to name Ms. Nelsen in the law suit and how she is planning to convince one of Defendants' customers to leave HRG supports Defendants' position that Ms. Richards' post-termination conduct was hostile to Defendants and would be a basis

---

[3] Similarly, Ms. Richards' submission of screen shots of a phone do not support her motion.  ECF No. 51-11, Ex N.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 42

1    for termination by itself.  ECF No. 51-8, Kirby Aff. Ex K at 000712-714; ECF No.

2    51-6, Kirby Aff. Ex I at 00413 (copies of Ms. Richards' post-termination text

3    messages complaining to Ms. Nelsen regarding her training); ECF No. 51-7, Kirby

4    Aff. Ex J (transcript of Ms. Richards' voice message to Ms. Nelsen with Ms.

5    Richards' derogatory comments about HRG and certain employees); ECF No. 20,

6    Garcea Decl., Ex 4 (transcript of Ms. Richards' voice mail).

7          Kris English states that Ms. Richards' post-termination conduct of calling Ms.

8    Nelsen and leaving a voice mail saying that "her manager and supervisor [were]

9    'idiots,' calling her billing lead Kendra Gasaway a 'bitch,' and threatening to cause

10   HRG's clients to no longer do business with HRG, . . ." would have resulted with

11   HRG's terminating Ms. Richards' employment regardless of whether Ms. Richards

12   followed through with the threats.  ECF No. 83, English Decl. ¶ 10.

13         The Court finds that Defendants have submitted sufficient evidence to raise

14   a genuine issue of material fact regarding whether Ms. Richards would have been

15   terminated for having inaccurately completed her employment application and for

16   her post-termination misconduct of sending derogatory telephone and text

17   messages to Ms. Nelsen.  Therefore, the Court denies Plaintiff's motion for

18   summary judgment to dismiss Defendants' after acquired evidence defense.

19         Ms. Richards also argues that her post-termination misconduct arose as a

20   direct result of her wrongful termination, and therefore Ms. Richards contends that

21

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 43

her post-termination misconduct should not be used as support for an after-acquired evidence defense. ECF No. 48 at 16. As the Court already has determined that no wrongful termination occurred, Ms. Richards' argument is not persuasive.

If this case were to proceed to trial, Defendants would be entitled to an after-acquired evidence defense. The Court denies Plaintiff's Motion for Partial Summary Judgment, ECF No. 48.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' motion for summary judgment dismissal of all Plaintiff's claims against Defendants, **ECF No. 53**, is **GRANTED**.

2. All of Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

3. Plaintiff's motion for partial summary judgment, **ECF No. 48**, is **DENIED**.

4. Judgment shall be entered in favor of all Defendants on all claims.

The District Court Clerk is directed to enter this Order, enter Judgment as outlined above, and provide copies to counsel.

**DATED** this 20th day of September 2016.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 44